40 So.3d 910 (2010)
Alex SINK in her capacity as Chief Financial Officer of the State, the Florida Department of Financial Services, and State of Florida, Appellants,
v.
EAST COAST PUBLIC ADJUSTERS, INC., a Florida corporation; Premier Public Adjusting, Inc., a Florida corporation; and Ameriloss Public Adjusting Corp., a Florida corporation, Appellees.
No. 3D10-246.
District Court of Appeal of Florida, Third District.
July 28, 2010.
*912 David J. Busch, Tallahassee, for appellants.
Greenberg Traurig and Arthur J. England, Miami; Bilzin Sumberg Baena Price & Axelrod and Michell Widom and Lori P. Lustrin, for appellees.
Before CORTIÑAS and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, J.
In 2008, the Florida Legislature amended section 626.854 of the Florida Statutes to include new regulations on public adjusters doing business in Florida. Among these regulations were section 626.854(6), limiting the timing of a public adjuster's initial contact with a potential client, and section 626.854(11)(b)(2), capping the maximum fee that may be charged by a public adjuster. Appellees, East Coast Public Adjusters, Inc. ("East Coast"), Premier Public Adjusting, Inc. ("Premier"), and Ameriloss Public Adjusting Corp. ("Ameriloss") (collectively the "Adjusters") filed suit in Miami-Dade County challenging the facial and as-applied constitutionality of these two sections and seeking injunctive relief from their enforcement. Appellants, Alex Sink in her capacity as Chief Financial Officer of the State of Florida, the Florida Department of Financial Services (the "Department"), and the State of Florida, filed a motion to dismiss the complaint, or in the alternative, to transfer venue to Leon County. This appeal followed the denial of the appellants' motion.
In civil actions "against the state or one of its agencies, the Florida common law home venue privilege provides that venue is proper in the county where the agency maintains its principal headquarters." Barr v. Fla. Bd. of Regents, 644 So.2d 333, 335 (Fla. 1st DCA 1994) (citations omitted); Fish & Wildlife Conservation Comm'n v. Wilkinson, 799 So.2d 258, 260 (Fla. 2d DCA 2001) ("It is well established within the common law that venue in an action against a governmental agency lies in the county where the agency maintains its principal headquarters."); Dep't of Highway Safety & Motor Vehicles v. Sarnoff, 734 So.2d 1054, 1056 (Fla. 1st DCA 1998). The home venue privilege, however, is not without exception. Barr, 644 So.2d at 335. The exception argued by the Adjusters, known as the "sword-wielder" doctrine, applies when a "plaintiff seeks judicial protection from a real or imminent *913 danger of invasion of the plaintiff's constitutional rights by the state agency." Id. (citations omitted). In determining whether the sword-wielder doctrine is applicable, "[t]he test is whether the state is the original sword-wielder, and the plaintiff's suit a shield against the state's thrust. If so, a suit may be maintained in the county where the blow has been or is about to be struck." Nyberg v. Snover, 604 So.2d 894, 895 (Fla. 1st DCA 1992) (citing Fla. Pub. Serv. Comm'n v. Triple "A", 387 So.2d 940, 942 (Fla.1980)). Furthermore, "the sword-wielder exception is applicable only where the official action unlawfully infringes on the plaintiff's constitutional rights." Brown v. State, 705 So.2d 1041, 1042 (Fla. 2d DCA 1998) (citing Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 363-64 (Fla.1977)).
The burden of proof and persuasion in establishing the application of either the home venue privilege or the sword-wielder exception shifts back and forth between the plaintiff and defendant. Wilkinson, 799 So.2d at 260.
When an agency wishes to challenge a plaintiff's venue selection, it must first raise the issue in a motion to dismiss or an answer. It has the burden to prove its right to the governmental home venue rule. Typically, the headquarters of the agency is established by law or is otherwise an admitted fact, and no additional evidence is required to prove the general application of the home venue privilege. The burden then shifts to the plaintiff to plead and prove facts establishing an exception to the general rule. If the plaintiff pleads these allegations and presents evidence to establish the sword-wielder exception, then the agency must respond with conflicting evidence or the plaintiff prevails on its venue selection. Finally, if the agency responds with conflicting evidence, then the burden of persuasion returns to the plaintiff, and the trial court must resolve the factual dispute.
Id. at 260-61 (citations omitted).
Aside from the general statement that "[a]ll of the actions giving rise to this cause of actions [sic] occurred in Miami-Dade County," the Adjusters' complaint is devoid of specific allegations tying the Department's investigations to the challenged statutory provisions. In opposition to the appellants' motion to dismiss, the Adjusters filed several affidavits and correspondence purportedly demonstrating the Department's activities warranting application of the sword-wielder doctrine. While the Adjusters apparently concede that the 48-hour wait period required under section 626.854(6) is not implicated by the Department's actions, they maintain that the investigatory activity identified in their affidavits and correspondence relates to the fee cap required by section 626.854(11)(b)(2).
The documents filed by the Adjusters show that the Department sent correspondence to Ameriloss and Premier advising them that investigations had been opened concerning their insurance-related activities in Florida.[1] We acknowledge that the mere act of sending a letter by an agency is insufficient to warrant application of the sword-wielder doctrine. See Fla. Pub. Serv. Comm'n, 387 So.2d at 942 (finding that a letter threatening to seek injunctive relief if certain conduct was not ceased was insufficient to invoke the sword-wielder doctrine). The Adjusters, however, also filed affidavits stating that *914 Gene Cashier ("Cashier"), an agent of the Department, traveled to Miami-Dade County, visited and interviewed East Coast's clients, interviewed a contractor used by one of the clients, and advised the clients that East Coast was being investigated on suspicion of fraudulent or excessive claims. In addition, the Adjusters produced the affidavit of Premier's president attesting that a special investigator from the office of the Chief Financial Officer visited Premier's business location, advised Premier that it was under investigation, and obtained copies of Premier's files and fee calculation for a particular claimant. Lastly, the Adjusters indicate that while the lawsuit was pending, the Department sent a letter in January 2010 to Premier requesting information and documentation as to one of its contracts that contained a commission of 25 percent, despite that "[u]nder Florida Statute 626.854(11)(b)(2), the cap is 20 percent." We need not consider the January 2010 letter as it was not before the trial court at the time the motion to dismiss was heard, and, moreover, the investigation referenced therein was closed without further action.
It is noteworthy that the Adjusters' affidavits pertaining to Cashier reference his activities as "investigating an alleged fraud by East Coast," "investigating allegations that East Coast had filed an improper claim," and advising East Coast's former client that "an investigation had been initiated. . . because he believed that one of East Coast's employees . . . had filed an excessive claim." The affidavit filed by Premier's president states that the Department's agent was "investigating allegations that [Premier] had charged in excess of the fees allowable under Fla. Stat. 626.854." We note that section 626.854 includes limitations on public adjuster fees outside of those in section 626.854(11)(b)(2). In response, the appellants filed two affidavits, including one by Cashier unequivocally stating that he had "not been asked to enforce, [nor had he] attempted to enforce or prosecute any person or entity with a violation of the 48-hour waiting period provision of section 626.854(6), Florida Statutes (2009) and the fee cap provisions of section 626.854(11)(b), Florida Statutes (2009)." Cashier further attested that "[n]one of the referenced investigations cited therein concerned allegations of misconduct pursuant to the above-referenced statutes."
On its face, section 626.854(11)(b)(2) provides:
(b) A public adjuster may not charge, agree to, or accept any compensation, payment, commission, fee, or other thing of value in excess of:
2. Twenty percent of the amount of all other insurance claim payments.
§ 626.854(11)(b)(2), Fla. Stat. (2009). Based upon the plain language of this section, fraudulent and excessive claims, such as those purportedly being investigated by Cashier, are outside of the scope of section 626.854(11)(b)(2), and the Adjusters' attempt to attack and forestall these investigations by challenging the constitutionality of sections 626.854(6) and 626.854(11)(b)(2) is misplaced. The Adjusters argue that the two statutory sections are unconstitutional, and as such, their affirmative enforcement is a violation of the Adjuster's constitutional rights sufficient to merit application of the sword-wielder doctrine. This argument fails because there is nothing in the complaint or in the evidence presented in response to the motion demonstrating that the Department's purported investigation of the Adjusters results from or is related to the enforcement of the two challenged sections. "The . . . `sword-wielder' doctrine applies only in those cases where the official action complained *915 of has in fact been or is being performed in the county wherein the suit is filed, or when the threat of such action in said county is both real and imminent." Carlile, 354 So.2d at 365. The actions alleged in the complaint, namely the restrictions on speech and the time, place, and manner of conducting business caused by section 626.854(6) and the denial of due process by section 626.854(11)(b)(2), do not coincide with, and appear to have no connection to, the alleged activities of the Department against the Adjusters in Miami-Dade County. Moreover, because of the lack of connection between the supposed infringement and denial of constitutional rights and the Department's various activities related to the Adjusters, it cannot be said that the Adjusters' "action [in filing the complaint] is in the nature of a shield against the state's thrust." See Carlile, 354 So.2d at 365.
As the Adjusters were unable to sufficiently establish the application of the sword-wielder doctrine, the home venue privilege should have been applied by the trial court. Addison v. City of Tampa, 33 So.3d 742, 744 (Fla. 2d DCA 2010) ("Unless a recognized exception applies, the home venue privilege is absolute." (citing Fla. Dep't of Children & Families v. Sun-Sentinel, Inc., 865 So.2d 1278, 1288 (Fla. 2004))). Based on the foregoing, we reverse the trial court's order and remand with instructions that venue be transferred to Leon County.
Reversed and remanded.
NOTES
[1] The correspondence to Ameriloss and Premier was sent after the filing of the Adjusters' complaint.